## The Inhabitants of LEXINGTON *versus* The Inhabitants of BURLINGTON.

Under *St.* 1793, *c.* 34, upon the division of a town, a person having a legal settlement therein, but being removed therefrom at the time of such division, acquired a settlement in that town in which his *last* dwellingplace in the original town happened to fall upon such division.

But where a special statute set off an individual, with his family and real estate, from one town and annexed them to another, it was held that the settlement in the former town, of another person removed therefrom but whose last residence therein was upon the land so set off, was not transferred to the town to which such land was annexed.

ASSUMPSIT for expenses incurred by the plaintiffs in the support of Polly Locke, a pauper whose settlement was alleged to be in Burlington. Trial before *Wilde* J.

The pauper was the daughter of William Locke; who was born in Woburn in 1720. Burlington was then a part of Woburn. William's father was living on the Hammond Locke place at the time of William's birth. Polly was born in 1760, her father, at that time, living with his father on the Hammond Locke place. He continued to live there, with his family, for eight or ten years after the birth of Polly. He then removed to the Welsh place, where he lived a year or more, and from thence he removed to the Perry place, where he lived with his family, Polly being one of the family, until after the commencement of the revolutionary war. While living on the Perry place, he enlisted in the army and went to Ticonderoga, and there died in 1776. His family then was broken up, and Polly has lived in different places since, gaining no settlement for herself.

In 1799, the northwesterly part of Woburn, including the Hammond Locke, Welsh, and Perry places, was incorporated into the town of Burlington.

In 1761, the father of William conveyed the Hammond Locke place to Thomas Locke, and in 1800 "Thomas Locke, with his family, and his real estate following," &c. (being about one third part of the Hammond Locke place, and including all the buildings,) was set off from the town of Burlington and annexed to the town of Lexington.

The depositions of the pauper and her brother, Nathan Locke, were made a part of the case, and are noticed in the opinion of the Court.

If Polly's settlement was in Burlington, the defendants were to be defaulted ; otherwise a nonsuit was to be entered.

*J. Keyes*, for the plaintiffs, cited *St.* 1793, *c.* 34, § 2, 10th mode of gaining a settlement ; *Groton* v. *Shirley*, 7 Mass. R. 156 ; *Westborough* v. *Franklin*, 15 Mass. R. 254 ; *Fitchburgh* v. *Westminster*, 1 Pick. 144 ; *Brewster* v. *Harwich*, 4 Mass. R. 280 ; 2 Special Laws, 283, 342.

*Hoar*, for the defendants.

SHAW C. J. delivered the opinion of the Court. It is conceded that Polly Locke had her settlement in Woburn prior to the incorporation of Burlington in 1799. It is immaterial, in what part of the town she or her ancestors resided when they acquired a settlement. In the case of the Bridgewaters, 9 Pick. 55, that point was rendered material by the peculiar words of the act of incorporation. Those who should thereafter become chargeable, should be deemed to have their settlement in that town, on the territory of which the settlement had been acquired. But this was a departure from the general rule, and was so considered.

On the incorporation of Burlington, whether Polly Locke, being thus settled in Woburn, had a home or residence there, is immaterial. If she had, then by force of the act, her settlement was fixed to the old town or the new, as she had her home in the one or the other at the time. But if she had left the town and had a home elsewhere, then by the statute of 1793, *c.* 34, § 2, 10th mode, her settlement must be in the town embracing the territory on which she formerly had her home. If she formerly had a home in different parts of the town, the reasonable construction would be, the last place where she had her home, before the incorporation.

Then looking at the evidence the Court are all satisfied, that she had no domicil in Woburn at the time of the incorporation of Burlington. In the account which she gives of herself, she mentions no date later than the dark day, nearly twenty years before the incorporation ; and her brother speaks of her residence only for a few years after the death of her father in

1776. Had she lived in Woburn to a later period than 1780 or 1782, which would be after she had arrived at years of maturity, say from twenty to forty years of age, it would probably be capable of proof, and evidence might have been obtained of the fact. We are to presume therefore, that she had no home in Woburn in 1799. But she had a settlement there, and was of course precisely within the terms of the statute of 1793, 10th mode, and shall have her legal settlement in that town wherein her former dwellingplace or home has happened to fall on such division.

Then the question is, in what part of Woburn she last had her home, before the incorporation. Following the residence of her father, whether the Hammond Locke place, the Welsh or the Perry place, they were all in the part set off as Burlington. But her mother broke up and went to Russell's, at service as a housekeeper. Take the evidence of the brother and of the pauper together, she was there only on visits to her mother, she never did any work there, and was there occasionally at short intervals. We think the evidence fails to establish a home there. Her own testimony would rather lead to the conclusion, that her uncle Thomas's, the Hammond Locke place, was her home. The evidence is very slight and unsatisfactory, but such as it is, we think it preponderates in favor of this result. We think that fixes her in Burlington by the express provision of the statute.

Was her settlement there transferred to Lexington? We take it there is no evidence that she was an inhabitant or had her home at her uncle Thomas's when he and his family and estate were annexed to Lexington. But the argument is, that as her ancestor, from whom she had acquired a derivative settlement, had acquired it, whilst residing on that territory, her settlement would follow. But the law does not warrant this conclusion. *Westminster* v. *Fitchburgh*, 1 Pick. 144, is decisive. But this results from the general law; the special act only sets off the actual inhabitants of the part transferred, and the statute of 1793 does not, as in case of a newly incorporated town, provide for the settlement of those, then absent, who may afterwards become chargeable; their settlement remains unchanged by such annexation.

*Defendants defaulted.*